UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARTY LAMONE FOREMAN,

       Plaintiff,

v.                               Case No:  2:13-cv-735-FtM-38CM

JOSE SANTEIRO,

       Defendant.

_____/

## OPINION AND ORDER[1]

This matter comes before the Court on the following:

Defendant Jose Santeiro's ("Defendant's") Motion to Dismiss Plaintiff's Complaint (Doc. 32, filed March 17, 2014); and

Plaintiff Marty LaMone Foreman's ("Plaintiff's") Response in Opposition to Defendant's Motion to Dismiss (Doc. 39, filed April 21, 2014).

Plaintiff, proceeding *pro se*, initiated this action as a prisoner at the Everglades Correctional Institution in Miami, Florida by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).   In his complaint, Plaintiff sues psychiatric doctor Jose Santeiro based upon Defendant Santeiro's alleged indifference to Plaintiff's serious mental health needs. *Id.*   Defendant seeks dismissal of the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 32 at 1).   Plaintiff has filed a response in opposition to Defendant's motion to dismiss (Doc. 39), and it is now ripe for review.   For

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

the reasons set forth in this Opinion and Order, Defendant's motion is granted in part and denied in part.   In addition, Plaintiff's claims for compensatory and punitive damages are dismissed under 42 U.S.C. § 1997e(e).

## I.   Pleadings

### A.   Complaint

The facts, as alleged in Plaintiff's complaint and its attachments, surround events that occurred at the Desoto Correctional Institution Annex in Arcadia, Florida on April 9, 2013.   The facts are alleged as follows:

On April 9, 2013, Plaintiff was ordered placed into administrative confinement pending disciplinary charges (Doc. 1 at 5).   While being transported to administrative confinement, Plaintiff declared a psychological emergency and informed his attending nurses that he would commit suicide as soon as he was freed from his hand restraints. *Id.*  Nurse Thomas, who is not a defendant in this case, questioned Plaintiff in order to fill out a "self-harm threat admission form." *Id.*   Nurse Wilson, who is not a defendant in this case, telephoned Defendant Santeiro, the on-call mental health practitioner, to report Plaintiff's threat. *Id.*   Thereafter, Nurse Wilson stated that Defendant told her not to place Plaintiff on Self-Harm Observation Status ("SHOS") or extend mental health treatment. *Id.* at 6.   Rather, Nurse Wilson was instructed "to allow security (DOC officials, correctional) to do as they pleased with the plaintiff instead." *Id.*

Plaintiff was escorted to the Desoto Annex's confinement building where his hand restraints were removed, and he was ordered to remove his clothing in preparation for a strip search (Doc. 1 at 6).   Plaintiff removed his pants and immediately attempted to hang himself by tying one end of the pants to the shower's cell door and the other end around his neck. *Id.*   "[S]ecurity immediately responded by one officer grabbing a hold onto the

end of the pants leg that was tied around the bars and began pulling it up to create slack in the pants to prevent the plaintiff from being able to hang from the bars any further[.]" *Id.* Another officer used chemical agents to subdue Plaintiff until he "ceased his self-harming behavior and again submitted to hand restraints." *Id.* at 9.

Plaintiff was given a decontamination shower and was again met by Nurse Wilson who conducted a post use-of-force medical examination (Doc. 1 at 9).   Plaintiff told Nurse Wilson that he would attempt suicide again as soon as his hand restraints were removed. *Id.* Nurse Wilson re-contacted Defendant who instructed Nurse Wilson not to admit Plaintiff to the SHOS or extend mental health treatment, but to allow security to deal with him instead. *Id.*

Plaintiff was taken to the confinement building and placed into a property restriction cell for 72 hours that contained no bedding or clothing except for Plaintiff's boxer shorts (Doc. 1 at 9-10).   Plaintiff asserts that the cell was very cold because the window was open, and Plaintiff became sick as a result of the temperature and suffered mental and emotional distress. *Id.*

Plaintiff asserts that had Defendant examined his medical records when Nurse Wilson called him, he would have seen that he (Plaintiff) has an "extensive mental health history" and had attempted suicide "numerous" times prior to the April 9, 2013 incident and had been admitted into the Florida Department of Corrections Crisis Stabilization Unit and Trauma Care Unit to undergo "extensive mental health observation and treatment." (Doc. 1 at 10).

Plaintiff filed numerous grievances regarding the occurrences on April 9, 2013 which he attached to his complaint (Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 1-4; Doc. 1-5; Doc. 1-6; Doc. 1-7).   In response to his April 17, 2013 grievance, Plaintiff was informed that

"Dr. Santeiro was called two (2) times less than an hour apart and [] gave orders for [Plaintiff] to remain in confinement." (Doc. 1-2 at 2).   In his April 23, 2013 grievance, Plaintiff complained of the conditions in his property restriction cell (Doc. 1-3).   In response, it was noted that, "on April 9, 2013, force was used on inmate Foreman to prevent an attempt of self-harm by hanging himself.   Inmate was seen by medical who deemed him to be a security issue.   Inmate Foreman was given a mattress.   However, he was placed on property restriction due to the attempted self-harm." *Id.*

In his May 21, 2013 and June 26, 2013 grievances, Plaintiff asserted that two months prior to his suicide attempt, Defendant had referred him to a psychologist at Charlotte Correctional Institute with a recommendation that he be placed on psychotropic medication (Doc. 1-5 at 1).   Plaintiff asserts that he refused to accept the medication offered him at Charlotte Correctional (Doc. 1-6 at 2).   Plaintiff asserts that Defendant had previously stated that Plaintiff had various mental illnesses and should not be housed at DeSoto Correctional Institution. *Id.*   Both grievances were returned without action as improperly filed (Doc. 1-5 at 2; Doc. 1-6 at 3).   Plaintiff repeated his allegations against Defendant in another June 26, 2013 grievance which was denied because the warden could not corroborate Plaintiff's allegations (Doc. 1-7 at 2-4).

Plaintiff asserts that Defendant was deliberately indifferent to his serious medical needs by refusing to immediately treat his mental illness and by failing to place him on suicide watch to prevent him from attempting self-harm (Doc. 1 at 5).   He seeks compensatory and punitive damages of $230,000, a jury trial, and any additional relief deemed just and proper. *Id.* at 7.

### B.      Motion to Dismiss

Defendant filed a motion to dismiss Plaintiff's complaint (Doc. 32).   He asserts that Plaintiff has failed to allege facts indicating that he was deliberately indifferent to his serious medical condition. *Id.* at 1.   Specifically, Defendant asserts that his decision to handle Plaintiff as a security risk was a matter of medical judgment, that Plaintiff did not have the desire or means to commit suicide, and that Plaintiff has alleged no injuries resulting from Defendant's alleged failure to offer mental health treatment to Plaintiff after his suicide attempt. *Id.* at 10-11.

## II.      Standards of Review

### A.      Federal Rule of Civil Procedure 12(b)(6)

Defendant's motion to dismiss is asserted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 32 at 1).   Under this rule, dismissal of a claim is proper if the plaintiff fails to "state a claim upon which relief can be granted." *Id.*   When considering a motion to dismiss, "all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto'." *Alvarez v. Attorney General for Fla.*, 679 F.3d 1257, 1259 (11th Cir. 2012) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).   Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

Prior to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), a court could dismiss a complaint only if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46

(1957).   This language as it relates to the Rule 12(b)(6) standard, was expressly rejected in *Twombly* wherein the Supreme Court concluded that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and "a formulaic recitation of the causes of action's elements will not do.   Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Supreme Court reinforced the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) when it reiterated that a claim is insufficiently pleaded if it offers only labels and conclusions or a formulaic recitation of the elements of a cause of action:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79 (internal citations, quotations, and punctuation omitted).   In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

**B.    Deliberate Indifference**

Prisoners have the right "to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected

from self-inflicted injuries, including suicide." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)).   To establish liability for a prisoner's suicide, or attempted suicide, under § 1983, a plaintiff must show that the jail official displayed "deliberate indifference" to the prisoner's taking of his own life or attempting to do so. *See Cook*, 402 F.3d at 1115.   "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.'" *Id.*   The mere opportunity for a prisoner to commit suicide, without more, "is clearly insufficient to impose liability on those charged with the care of prisoners." *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994) (en banc).   To be deliberately indifferent to a strong likelihood that a prisoner will commit suicide, the official must be subjectively aware that the combination of the prisoner's suicidal tendencies <u>and</u> the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide. *See Gish v. Thomas*, 516 F.3d 952, 954–55 (11th Cir. 2008).

The Eleventh Circuit recognizes a three-prong test to establish a prima facie case of deliberate indifference under 42 U.S.C. § 1983.   The Plaintiff must show: (1) that he has a serious medical need;[2]  (2) that the prison official acted with deliberate indifference to that need; and (3) as with any other tort claim, that he suffered an injury from the

---

[2] For the purposes of this motion to dismiss, the Court will assume, without deciding, that Plaintiff's alleged mental illness was a "serious medical need." *See Jacoby v. Baldwin County*, Case No. 12-0197-WS-M, 2013 WL 2285108 (S.D. Ala. May 22, 2013) ("The Court concedes that a mental illness is an objectively serious medical need."); *Bozeman v. Orum*, 199 F.Supp.2d 1216, 1232 (M.D. Ala. 2002) ("Psychiatric needs can constitute serious medical needs[.]").

defendant's wrongful conduct. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)).

## III.   Analysis

Plaintiff asserts that Defendant Santeiro was deliberately indifferent to his serious mental health needs on two separate occasions.   First, he asserts that Defendant showed deliberate indifference when he failed to have Plaintiff sent to a suicide watch cell and provided with mental health treatment immediately after he declared a medical emergency and threatened to commit suicide.   Next, he asserts that Defendant was deliberately indifferent to his serious mental health needs by failing to have Plaintiff sent to a suicide watch cell and provided with mental health treatment immediately after his suicide attempt (Doc. 39 at 7-8).

### A.   Plaintiff has stated a plausible deliberate indifference claim regarding Defendant's reaction to his initial suicide threat

Plaintiff argues that Defendant Santeiro's failure to order that he be sent to suicide watch and provided immediate mental health treatment after his initial suicide threat caused him (Plaintiff) to attempt suicide in full view of the officers at the facility (Doc. 1 at 9).   The officers immediately subdued Plaintiff physically and with the use of chemical agents. *Id.*   Plaintiff alleges that the use of the chemical agents caused him "pain and suffering." *Id.*

As noted above, for a health care professional to be deliberately indifferent to a strong likelihood that a prisoner will attempt suicide, the professional must be subjectively aware that the combination of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will attempt self-harm. *Gish v. Thomas*, 516 F.3d at 954–55.      According to the attachments to Plaintiff's complaint, Defendant had treated Plaintiff on prior occasions

and had concluded that he had an "extensive psychological history." (Doc. 1-5 at 1).   The Court will not speculate why (or if) Defendant did not order mental health treatment after Plaintiff's first suicide threat or believed Plaintiff's April 9, 2013 threats to be a security issue rather than a mental health concern.   Nor can the Court conclude, based solely upon the pleadings before it, that Defendant's determination that Plaintiff's behavior was a security issue was based upon medical judgment.   Finally, although Defendant argues that Plaintiff had neither the intent nor the means to actually commit suicide (Doc. 32 at 11), this argument is appropriate in a motion for summary judgment, not in a motion to dismiss where the Court must accept all of the plaintiff's factual allegations as true.

At this stage of the proceedings, the Court cannot conclude, based solely on the allegations in the complaint and its attachments, that Plaintiff has not stated a plausible deliberate indifference claim against Defendant based upon his inaction immediately following Plaintiff's initial suicide threat.   Accordingly, Plaintiff's deliberate indifference claim as it relates to the first incident on April 9, 2013 will be allowed to proceed. However, for the reasons set forth below, Plaintiff will not be allowed to recover compensatory or punitive damages for Defendant's alleged deliberate indifference.

**B.     Plaintiff's claims for compensatory and punitive damages arising from the pain and suffering associated with Plaintiff's suicide attempt are dismissed under 42 U.S.C. § 1997e(e)**

No 42 U.S.C. § 1983 action "may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) (stating that "to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*").   The

facts as alleged by Plaintiff in his complaint show that he was prevented from going forward with his suicide attempt "immediately" by corrections officers, and that he suffered no physical harm as a result thereof (Doc. 1 at 6).   Plaintiff's formulaic allegations of pain and suffering associated with the chemical agents used to subdue him after his suicide attempt fail to satisfy this threshold § 1997e(e) requirement.   Plaintiff alleges no physical injury at all, much less injury that is more than *de minimis*, as a result of the chemical agent application. *See Beecher v. Jones*, Case No. 3:08cv416/MCR/EMT, 2010 WL 5058555 (N.D. Fla. Oct. 29, 2010) (finding that prisoner who alleged no physical injury arising from use of chemical agents failed to show requisite physical injury under § 1997e(e)); *Palmer v. Walker*, Case No. 2:09cv401, 2011 WL 836928, at *8 (M.D. Fla. Mar. 9, 2011) (prisoner who suffered temporary eye irritation as the result of application of chemical agents failed to show more than a *de minimis* physical injury under § 1997e(e)); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (prisoner who suffered the discomfort of pepper spray had shown only *de minimis* injury, insufficient to satisfy section 1997e(e)); *Kirkland v. Everglades Correctional Inst.*, Case No. 12-22302-CIV, 2014 WL 1333212, at *6 (S.D. Fla. Mar. 31, 2014) (temporary chemical burns and minor respiratory problems from exposure to a chemical agent were only minor *de minimis* injuries).

Accordingly, Plaintiff's claims for compensatory and punitive damages related to his suicide threat and suicide attempt are dismissed.   However, the Eleventh Circuit has concluded that § 1997e(e) does not bar suits by prisoners who have not alleged a physical injury if they seek only nominal damages. *See Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003); *Nix v. Carter*, Case No. 5:10–cv–256 (CAR), 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013) ("Nominal damages are appropriate if a plaintiff establishes a violation

of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.") (citing *Hughes*, 350 F.3d at 1162).

Nominal damages do not generally exceed one dollar. Therefore, the Court cannot construe Plaintiff's $230,000 damages requests as a request for nominal damages. Liberally construed, however, Plaintiff's complaint may state a claim for nominal damages because he asked for "[a]ny additional relief this court deems just, proper, and equitable" (Doc. 1 at 7). Therefore, Plaintiff may seek token damages on this claim. *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); *Harrison v. Myers*, Case No. 10–0566–KD–N, 2011 WL 3204372, at *7 (S.D. Ala. July 13, 2011) (prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling).

### C.     Plaintiff's claims arising from his confinement on property restriction are dismissed for failure to state a claim upon which relief may be granted

Plaintiff claims that Defendant was deliberately indifferent to his serious mental health needs by failing to have him sent to a suicide watch cell and provided with mental health treatment immediately following his suicide attempt (Doc. 39 at 8). Plaintiff asserts that he suffered harm as a result of Defendant's alleged failure because the confinement unit to which he was sent was cold, unpleasant, and caused him to become ill due to its temperature (Doc. 1 at 10).

Plaintiff states that he was being escorted to administrative confinement for a disciplinary charge at the time he made his initial suicide threat (Doc. 1 at 5). After his

suicide attempt, Plaintiff was "deemed to be a security issue[,]" kept on administrative confinement, and placed on property restriction because of his attempt at self-harm (Doc. 1-3 at 1).   Plaintiff admits that it was Captain Ellis, not Defendant, who ordered that he be placed in a strip cell on property restriction after his suicide attempt. *Id.*   Plaintiff does not allege that Defendant is responsible for the conditions in, or the temperature of, the prison's confinement cells (Doc. 39 at 11).   Presumably then, Plaintiff attempts to attribute liability to Defendant because he did not demand that Captain Ellis remove Plaintiff from administrative confinement as a result of his suicidal behavior.

Plaintiff's second deliberate indifference claim against Defendant Santeiro fails on the third prong of the Eleventh Circuit's deliberate indifference test because Plaintiff cannot show that he suffered any injury caused by Defendant's wrongful conduct. *See Goebert*, 510 F.3d at 1326.   Moreover, Plaintiff has not stated any constitutional claim resulting from his disciplinary confinement.   That Plaintiff would have preferred to be placed on suicide watch where "inmates are provided with a nylon made shroud to wear to cover the upper and mid part of their torso, which also keep them warm" is clear (Doc 39 at 7).   However, the constitution does not guarantee a prisoner comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).   Plaintiff was on disciplinary confinement for only 72 hours; a confinement that was ordered <u>prior</u> to Plaintiff's suicidal activity (Doc. 39 at 7).   The property restriction was ordered as a result of Plaintiff's attempt at self-harm.   A short-term placement in a confinement cell such as the one alleged by Plaintiff does not constitute an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (disciplinary confinement of inmates does not implicate constitutional liberty interests); *Brown v. Parnell*, Case No. 5:09-CV–P159–R, 2010 WL 1418735, at *5 (W.D. Ky. April

7, 2010) (prisoner did not allege a cognizable § 1983 claim against them where jail officials feared for prisoner's safety and placed him in isolation).

Finally, to the extent Plaintiff asserts that his mental health treatment was unconstitutionally delayed because Defendant did not immediately treat him, the claim fails. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1189 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). Although Plaintiff asserts that he never received mental health treatment from Defendant Santeiro (Doc. 39 at 9), it is clear in his complaint that he received mental health treatment from someone soon after his suicide attempt. Plaintiff complained in a grievance that he was placed on self-harm observation status as early as May 24, 2014 (Doc. 1-6 at 1). In addition, Plaintiff filed his June 26, 2013 grievance from the crisis stabilization unit at the South Florida Reception Center where he was undergoing mental health treatment (Doc. 1-6 at 2). As a prisoner, Plaintiff is not entitled to the mental health treatment of his choice. *See Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Plaintiff has not alleged that he has not received mental health treatment or that his mental health condition was worsened by any action of Defendant Santeiro; thus, Plaintiff's claim arising from his confinement after his suicide attempt are dismissed.

## IV.     Conclusion

Construing all allegations in the complaint in Plaintiff's favor, Defendant Santeiro's motion to dismiss is granted as to Plaintiff's claims arising from the conditions in his confinement cell. Fed. R. Civ. P. 12(b)(6).   Plaintiff's claims for compensatory and punitive damages are dismissed pursuant to 42 U.S.C. § 1997e(e) because Plaintiff has not alleged more than a *de minimis* physical injury.   Plaintiff's claim that Defendant Santeiro failed to respond to Plaintiff's initial suicide threat will be allowed to proceed, but he may recover nominal damages only.

Accordingly, it is now **ORDERED**.

1.     The Motion to Dismiss filed by Defendant Santeiro (Doc. 32) is **GRANTED** in part and **DENIED** in part;

2.     All claims arising from Plaintiff's placement in a confinement cell after his suicide attempt are dismissed without prejudice for failure to state a claim upon which relief may be granted;

3.     Plaintiff's claims for compensatory and punitive damages are dismissed without prejudice under 42 U.S.C. § 1997e(e); and

4.     Defendant Santeiro shall file an answer to Plaintiff's remaining claim within **TWENTY-ONE (21) DAYS** from the date on this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 28th day of August, 2014.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: OrlP-4 8/28/14
Copies: Marty LaMone Foreman
Counsel of record